# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERTO PASTRANA,<br><br>　　　　　　　　Plaintiff,<br>　v.<br><br>LOCAL 9509, COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO, a Labor Organization, et al.,<br><br>　　　　　　　　Defendants. | Case No. 06cv1779 BTM(AJB)<br><br>**ORDER DENYING MOTION FOR RECONSIDERATION** |

Plaintiff has filed his fifth motion for reconsideration of the November 20, 2008 order limiting his damages as a matter of law pursuant to defendant AT&T's after-acquired evidence defense. For the reasons discussed below, Plaintiff's motion is **DENIED**.

## I. BACKGROUND

In 2005, Pacific Bell Telephone Company ("PacBell"), a subsidiary of AT&T, Inc., terminated the employment of Plaintiff after discovering that Plaintiff was listed on the Megan's Law website for a 1997 conviction for lewd and lascivious acts upon a minor. Plaintiff's union (Local, 9509, Communications Workers of America, AFL-CIO) filed a grievance on behalf of Plaintiff, challenging his termination. PacBell denied Plaintiff's grievance, and the union decided not to pursue arbitration. Plaintiff has sued PacBell and the union for (1) unlawful discharge and breach of the duty of fair representation in violation

of Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185; (2) violation of Cal. Penal Code § 290.46; and (3) wrongful termination in violation of public policy.

In an order dated November 20, 2008 ("MSJ Order") [Doc. No. 93], Judge Whelan granted in part and denied in part motions for summary judgment filed by Defendants. Judge Whelan held that PacBell had established that it would have terminated Plaintiff based on after-acquired evidence that Plaintiff had taken sick leave on December 30 and 31, 1999, even though he was not sick but, rather, was incarcerated for possession of methamphetamine. Accordingly, Plaintiff's damages were limited to the period from his termination until PacBell's discovery of his wrongdoing.

In the year after the MSJ Order was filed, Plaintiff filed four ex parte applications seeking reconsideration of the Order. Each of these ex parte applications was denied. [Doc. Nos. 97, 117, 133, 140].

On August 12, 2010, this case was reassigned to Judge Moskowitz.

## II. DISCUSSION

For the fifth time, Plaintiff seeks reconsideration of the MSJ Order. Plaintiff contends that reconsideration is warranted based on newly discovered evidence showing that AT&T did not have a "settled" company policy of terminating employees for violating its sick leave policy. As discussed below, the Court finds that the "new evidence" does not merit reconsideration of the prior ruling on AT&T's after-acquired evidence defense.

Although the MSJ Order was issued two years ago, the Court may still consider Plaintiff's motion for reconsideration under Fed. R. Civ. P. 54(b). Under Rule 54(b), any interlocutory order "is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Generally, reconsideration is deemed appropriate if the district court (1) is presented with newly discovered evidence; (2) committed clear error or the initial decision was manifestly unjust; or (3) if there is an intervening change in controlling law. School Dist. No. J, Multnomah County, Oregon v. AC

& S, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993).

Plaintiff claims that he has newly discovered evidence in the form of the deposition testimony of four witnesses, Belinda Gonzalez, Joseph Atilano, Cherie Brokaw, and Trinidad Yessenia Batt. These depositions were taken in August and September 2010 in the case of Valdez v. AT&T, et al., 09cv0811 JAH (AJB).

Even assuming that the deposition testimony of these individuals could not have been discovered earlier with the exercise of due diligence, the Court concludes that the evidence does not warrant reconsideration. Plaintiff contends that the "new evidence" demonstrates that AT&T did not have a "settled" policy of firing employees for violating the sick leave policy. However, as discussed below, AT&T is not required to show that it had a "settled" policy under which it would have been required to fire Plaintiff for making a false sick leave claim.

If an employer wishes to rely upon the after-acquired evidence defense, "it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." McKennon v. Nashville Banner Pub. Co., 513 U.S. 352, 362-63 (1995). The Ninth Circuit explains, "The inquiry focuses on the employer's actual employment practices, not just the standards established in its employee manuals . . . ." O'Day v. McDonnell Douglas Helicopter Co., 79 F.3d 756, 762 (9th Cir. 1996). An employer is entitled to rely on sworn affidavits from its employees in proving that it would have discharged the plaintiff for the alleged misconduct. Id. at 762. Although an employer may not be able to prevail "based only on bald assertions that an employee would have been discharged for the later-discovered misconduct," the assertions may be corroborated by proof that the employer discharged other employees for the precise misconduct at issue, evidence of a company policy forbidding the conduct, or even common sense. Id. at 762. No Supreme Court or Ninth Circuit cases impose a requirement that the employer demonstrate the existence of a "settled" company policy requiring the termination of employees who engage in the conduct

at issue.[1]

In support of PacBell's motion for summary judgment, managers Connie Green and Jeff Smith declared that (1) Plaintiff had violated PacBell's Code of Business Conduct by making misrepresentations regarding his sick leave; and (2) they would have dismissed Plaintiff for his deception if they had known of it. (Green Decl. ¶ 19.; Smith Decl. ¶ 11.) PacBell also presented evidence that between January 1, 1998 and December 31, 2005, Alfred Buck Carter, an Area Manager in Asset Protection, investigated nine cases in which employees were found to have falsely reported their reason for absence so that they would be paid for their time away from work. (Carter Decl. ¶ 10.) In all but one of these nine instances, the employee was terminated. (Id.) The one management team that opted to give the employee a Final Warning of Dismissal and a 30-day unpaid suspension did not supervise Plaintiff. (Id.)

Based on the evidence before him, Judge Whelan properly ruled in favor of PacBell on the after-acquired evidence defense. Green's and Smith's claims that they would have terminated Plaintiff were corroborated by a company policy against making fraudulent misrepresentations and evidence that eight out of nine employees who had been found to have falsely reported their reason for being absent from work were fired.

The "new evidence" upon which Plaintiff relies does not undermine the claims of Green and Smith that they would have made the decision to fire Plaintiff. Overall, the evidence shows that although there is no firm requirement that an employee who lies about

---

[1] Plaintiff places too much reliance on a string of cases which use the "settled policy" language. In Welch v. Liberty Machine Works, Inc., 23 F.3d 1403, 1405-06 (8th Cir. 1994), the president of the defendant company stated in an affidavit that the company would not have hired the plaintiff if it had known of the information the plaintiff omitted on his job application. The president's statement was about the *company's hiring policy*; the president did not provide information regarding his personal hiring decisions or the past hiring practices of the company. In this context, the Eighth Circuit stated, "As the movant for summary judgment, Liberty bore the significant burden of establishing that it had a settled policy of never hiring individuals similarly situated to Welch." Id. at 1406. In Waag v. Thomas Pontiac, Buick, GMC, Inc., 950 F. Supp. 393, 409 (D. Minn. 1996), the court cited Welch for the general proposition that an employer must show that the plaintiff's firing would have taken place as a matter of "settled company policy." In turn, Murillo v. Rite Stuff Foods, Inc., 65 Cal. App. 4th 833, 846 (1998), quoted Waag. In Waltmon v. Ecology and Env't, Inc., 2001 U.S. Dist. Lexis 5981 (N.D. Cal. Jan. 2, 2001), the Northern District relied on Murillo in requiring a "settled company policy."

the reason for missing work be terminated, termination is the *usual* outcome in cases of confirmed fraud.  A decision-maker may choose to impose a lesser sanction such as a suspension based on the particular circumstances of the case.  But termination upon confirmation of leave fraud would be consistent with company practice.  Plaintiff has not come forward with evidence that Green and/or Smith have decided against termination in other cases of confirmed leave fraud.

Taking a specific look at the "new" evidence, Belinda Gonzalez, an Employee Relations Manager for AT&T's West region, stated that with respect to FMLA fraud, "There is no quote/unquote company policy.  Again, when those cases have been uncovered, all the facts are reviewed, and then the appropriate discipline is administered." (Gonzalez dep. (Pl. Ex. 4) 38:23-39:1.)   Gonazalez explained that the "case specifics determine the level of discipline imposed," and that "[t]he range could be anything from a written warning to termination."  (Id. at 39:5-7, 10-11.)    However, Gonzalez also stated, "Most cases would result in termination."  (Id. at 39:3.)

Plaintiff points to the following statement by Joseph Atilano, Associate Director of HR Operations: "[G]enerally we would deny leave only on those dates that they were – I guess, observed, where fraud, I guess, was observed. But, again, that's just in general." (Atilano dep. (Pl. Ex. 6) 132:19-21.)  However, Atilano was just talking about treatment of the leave, not how the employee would be disciplined.  In a portion of the deposition transcript omitted by Plaintiff, Atilano explained that his department is not involved with the discipline of employees: "The only involvement, the extent to which we get involved after the investigation is we could possibly deny the request for FMLA leave on the basis of fraud.  But once that happens, we're out of the picture.  We have no say in disciplinary matters." (Atilano dep. (PacBell Ex. 1) 129:11-15.)

Cherie Brokaw, a union representative, gave as an example of progressive discipline a situation where an employee is twice found on the beach after calling in sick: "So if they were found twice, maybe the first time they got a one-day suspension.  The next time, they might get ten days." (Brokaw dep. (Pl. Ex. 7) 115:5-7.)  Brokaw made it clear that she was

talking hypothetically and that she did not have a case like that. (Id. at 115:15.) Brokaw explained that "where people falsify records, there's some pretty serious things that can happen," including losing their jobs or suspension. (Id. at 115:16-21.)

Trinidad Batt, a union steward, testified about being involved in six grievances where an employee claimed to have been sick and requested paid leave and was later determined by the company to not have been sick. (Batt dep. (Pl. Ex. 9) 24:9-26:7.) The company would provide videotape of the employees performing activities that the company believed were inconsistent with being sick, and the union would try to provide documentation showing that the employee was going to the doctor or pharmacy or otherwise engaging in activity that was not inconsistent with being sick. In one of those cases, the employee was terminated. (Id. at 24:9-11.) In the other five cases, there was no termination. (Id. at 26:5-7.) However, Batt provides no detail regarding the cases where the employee was not terminated. It is unclear whether, in these cases, the union presented information that ultimately convinced the employer that there was insufficient evidence of leave fraud.

PacBell points out that Plaintiff fails to include the deposition testimony of Joan Filbert, who was deposed in the Valdez case on September 22, 2010. Filbert, Associate Director of HR Services, testified that in the case of proven FMLA or benefit fraud, the usual recommendation is termination. (Filbert dep. (PacBell Ex. 2) 121:12-13, 17-18; 124:18-20; 125:18-20.)

In sum, the evidence presented by Plaintiff does not warrant reconsideration of Judge Whelan's ruling on PacBell's after-acquired evidence defense. The "new" evidence does not create a triable issue of material fact with respect to whether Green and Smith would have terminated Plaintiff if they had discovered that Plaintiff was actually incarcerated during the time he took sick leave.

///
///
///
///

### III. CONCLUSION

For the reasons discussed above, Plaintiff's motion for reconsideration is **DENIED**.

**IT IS SO ORDERED.**

DATED: January 3, 2011

*Barry Ted Moskowitz*

Honorable Barry Ted Moskowitz
United States District Judge